The People ex rel. Martin Hayes, Appellee, v. City of Chicago et al., Appellants.

Gen. No. 13,921.

1. CIVIL SERVICE ACT—*how far courts may review action of commission.* It makes no difference whether the review is attempted by *certiorari* or in a petition for *mandamus;* the inquiry which may be made by the courts is limited to the question whether the commission had jurisdiction and whether it followed the form of proceedings legally applicable in such cases.

2. CIVIL SERVICE ACT—*when written charges before commission state "cause" sufficient to confer jurisdiction.* Jurisdiction is conferred upon the commission to punish where the charges allege the doing of anything explicitly forbidden and subjected to punishment by the written rules of discipline provided for the department. So held in a cause where the violation of discipline alleged was the entering by a policeman into a dram-shop while on duty but not while in the discharge thereof.

Mandamus. Appeal from the Circuit Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding. Heard in this court at the October term, 1907. Reversed and remanded. Opinion filed July 6, 1908.

Statement by the Court. This is an appeal by the City of Chicago and the other respondents from a

decree of the Circuit Court of Cook county rendered June 21, 1907, and running as follows:

"This cause coming on this day to be heard and now come the defendants and except to the ruling of the Court overruling the demurrer of defendants to said petition. And now come the defendants by their counsel and elect to stand by their demurrer; whereupon the Court doth order that a writ of mandamus issue under the seal of this Court, directed to the City of Chicago, to the Superintendent of Police of said City, to Joseph Powell, William Prentiss and Frank Wenter, and their successors in office as Civil Service Commissioners of said City, defendants in this cause, commanding said defendants to forthwith place the name of Martin Hayes upon the roster of police Captains and upon the police payroll of said City of Chicago, to the end that said Martin Hayes, relator, may at once enter upon the performance of his duties as police captain, with the same right to continue in the performance thereof, and receive salary therefor, as he had to continue in the performance thereof and receive salary therefor prior to his unlawful removal on October 1, 1906, subject to the laws, rules and ordinances pertaining to police captains of the City of Chicago."

The demurrer mentioned in this order was a general one. The petition to which it applied was filed January 30, 1907, by "The People at the relation of Martin Hayes." Its allegations, briefly abstracted, are as follows:

The City of Chicago is a municipal corporation under the City and Villages Act. It was incorporated under a prior act of the legislature, which created the office of three captains of police in the police department. After the adoption of the City and Village Act by Chicago, and on June 28, 1875, the city council passed an ordinance adopting all the members of the police force then working for the city and all the offices in the department. On April 18, 1881, an executive department of the city was created by ordinance, which consisted of superintendent of police, the secretary to the superintendent and one captain of police for each

police district. Said superintendent was the head of the police department, and until the Civil Service Act was adopted had the power of appointment of all members of the department, including captains. The aforesaid ordinance of April 18, 1881, provided that captains should be appointed from among the lieutenants and that the superintendent should divide the city into police districts, and that he did thereupon divide said city into fifteen districts.

The Civil Service Act became operative in Chicago on July 1, 1895, and Civil Service Commissioners appointed. On January 1, 1898, Martin Hayes, the petitioner, was a citizen of the United States more than twenty-one years old, and for more than two years had been a resident of Chicago, and was then a qualified elector of the city, and had never been a defaulter to the city. He had for six years prior been a lieutenant of police, for four years before that a sergeant of police, and for ten years before that a patrolman. On January 1, 1898, he took the civil service examination for captain of police, and passed as duly qualified.

February 8, 1898, the Civil Service Commission certified to the superintendent of police the name of the petitioner to fill a vacancy among the captains of police and the petitioner entered upon his duties as such captain.

The petitioner is "still a captain of police in said City of Chicago, duly appointed and qualified and lawfully entitled to all the rights and privileges of said office."

The petitioner has never violated any of the rules prescribed by the authorities for the regulation of the Police Department, nor any of the rules of the Civil Service Commission, nor any of the provisions of the Civil Service Act, nor has he ever been reprimanded or disciplined in any way while being a member of said department.

On August 31, 1906, the superintendent of police filed charges against the petitioner, charging petitioner

with the violation of two rules of the department and with neglect of duty. One of the rules was Rule 36, section 2, paragraph 2, and made a policeman liable to punishment, "reprimand, deduction of pay or dismissal from service, according to the nature and aggravation of the offense," for "entering any place where intoxicating drinks are sold while on duty, except in the immediate discharge of duty."

On October 1, 1906, the Civil Service Commission found the petitioner guilty as charged of "entering a place where intoxicating liquors are sold, while on duty, except in the immediate discharge of duty," and decided that "he be discharged from the Police Department and from the service of the City of Chicago," which order was immediately enforced by the superintendent of police.

The number of police captains since that time has never been as large as the number of police districts, and the office held by the petitioner has never been held by any other person, but the superintendent of police has refused to permit the petitioner to report for duty, and the superintendent and Civil Service Commission have refused to put the petitioner's name on the pay roll of the city, and the Comptroller of the city has refused to pay his salary.

This conduct of all these officials is unauthorized and illegal. The Civil Service Commission exceeded its jurisdiction in discharging the petitioner for the offense of which they found him guilty. Said offense is not sufficient offense to justify the judgment or order of discharge from the police department of the City of Chicago.

The Civil Service Commission have never since the adoption of the Civil Service Act ordered a discharge when an officer has been found guilty of such an offense as petitioner was found guilty of, but always have confined the punishment to a reprimand or a fine of from one to thirty days' pay and suspension for a period not exceeding thirty days. The Civil Service

Commission have many times sentenced an officer for drunkenness on duty only to a fine of from one to thirty days' pay or to a suspension from one to thirty days.

While said charges were pending and after the evidence was all heard and the matter was under advisement by the Commission, the Civil Service Commission notified the petitioner that if he would resign from the police department they would exonerate him upon all the charges then pending against him, but upon petitioner's stating that he would not resign, said Commission thereupon exonerated him upon part of the charges, but found him guilty on one as above set forth.

The petition then sets forth the whole of Rule 36 of the Book of Rules governing the Police Department, which rule sets out forty-two offenses for which policemen are subject to the penalties of reprimand, fine or dismissal, as before mentioned. It then charges that:

"According to the intent, meaning and wording of said rule the offense of which petitioner was found guilty is the most trivial of the offenses enumerated in said rule; there was no aggravation of the offense; there was no repetition of the offense; from the nature of the offense and the finding, it was not such an offense as to cause the offender to be subjected to the greatest penalty therein provided, but should have called for the least punishment therein provided, to-wit, a reprimand or at most a deduction of pay not to exceed thirty days, due or to become due; the judgment and order of discharge was, in the light of said rule, unreasonable, excessive, oppressive and tyrannical, and therefore illegal and unlawful."

It also charges that the judgment or order of discharge was entered by the Civil Service Commission in excess of its jurisdiction, was without jurisdiction and void, and that so also was the action of the Superintendent of Police; and that the petitioner has made demands without success on the City, the Superintendent of Police, the Civil Service Commission and the

City Comptroller, to cause his name to be placed on the pay-roll, "to the end that he might be enabled to draw his salary due to him as a police officer, alike the salary already accrued to him and the salary accruing to him from month to month as such Captain of Police of said City, to which he is lawfully entitled;" and that the said salary is $186.50 a month.

Wherefore the petitioner prays for a mandamus on the City and Superintendent of Police and Civil Service Commissioners and City Comptroller, to forthwith place the name of the petitioner on the roster of police officers and upon the police pay-roll of the City of Chicago.

CLYDE L. DAY and GEORGE W. MILLER, for appellants; EDWARD J. BRUNDAGE, of counsel.

A. D. GASH, for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

We think the Circuit Court erred in overruling the demurrer to this petition for *mandamus*. It should have been sustained.

The reasons alleged in the petition for granting the writ resolve themselves into this proposition—that the Civil Service Commission was tyrannical, unjust and oppressive in visiting so severe a punishment on what is claimed to be a comparatively light offense. Moreover, there is an implied charge of an attempted corrupt bargain, contrary to the spirit of the Civil Service Law, by which, if the petitioner would waive his right to protection and resign, he should be acquitted. The conviction is laid to his repudiation of this offer.

But with these things this court has nothing to do. We stated in the case of Heaney v. The City of Chicago, 117 Ill. App. 405, our view of how far the Circuit Court or Superior Court or this court may review the decisions of the Civil Service Commission of Chicago in a trial of city officers or employes protected by the Civil

Service Act and Regulations, and we have seen no reason to change it. It makes no difference whether the review is attempted by *certiorari* or in a petition for *mandamus;* the inquiry on our part and on the part of the Circuit and Superior Courts is limited to the questions whether the Commission had jurisdiction and whether it followed the form of proceedings legally applicable in such cases. This is what the Supreme Court said in People v. Lindblom, 182 Ill. 241, and we have repeated in the Heaney case and in other cases.

With the justice or injustice of the Commission's findings and sentence the courts have nothing to do, nor with the severity of the punishment, provided always that the finding and action are within its jurisdiction and the proceedings regular. There is no charge (except conclusions of law) in the petition that in this case that jurisdiction or regularity failed.

We have held that a "cause" must be stated in the written charges, but the doing of anything explicitly forbidden and subjected to punishment by the written rules of discipline provided for the department, especially such a plainly substantial violation of discipline as to enter a dram-shop while on duty but not in discharge of duty, is sufficient "cause."

The petitioner may not have been guilty, or he may have been punished too severely for justice, but these things cannot protect him from discharge under the Civil Service Law. That law only protects him from discharge when the Commission has not found him guilty, has tried him for something over which it had no jurisdiction, or, in trying him, has not proceeded according to the forms prescribed by the law.

We are of opinion that the petition for *mandamus* on its face shows that it should be denied, and we therefore must reverse the judgment with directions to the Circuit Court to sustain the demurrer and dismiss the petition.

*Reversed and remanded with directions.*